**Counsel for Defendant**
Robert Ross Fogg, Esq.
Law Office of Robert Ross Fogg, Esq., LL.M.
69 Delaware Avenue, Suite 600
Buffalo, New York 14202
Tel: (716) 853-3644  Fax: (716) 852-6782
rfogg@rfogglaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | NOTICE OF MOTION AND MOTION |
| v. | |
| PAUL D. CEGLIA, | CASE No: 12-cr-00876-VSB-1 |
| *Defendant.* | |

---

**NOW COMES** Defendant's Counsel, Robert Ross Fogg, who moves this Honorable

Court for an order dismissing the instant indictment on the following grounds:

1) The Gibson Dunn Attorneys have perpetrated a fraud upon the Court through willful deliberate conduct and systematic efforts;

2) The alleged material that forms the basis of the Indictment was placed in the public domain by the complainants and are not a basis for criminal conduct; alternatively

3) Defendant's Counsel, Robert Ross Fogg, moves this Honorable Court for an order to hold hearings on the salient issues; or

4) Defendant's Counsel, Robert Ross Fogg, moves this Honorable Court for an order to hold a trial *in absentia*;

Dated:   October 20, 2023                    Respectfully Submitted,

                                    By: /s/ Robert Ross Fogg

To:   Hon. Damian Williams
      United States Attorney for the United States of America
      for the Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

*Plaintiff,*                          Affirmation of Attorney

v.                                     CASE No: 12-cr-00876-VSB-1

PAUL D. CEGLIA,

*Defendant.*

---

STATE OF NEW YORK    )
COUNTY OF ERIE          )   : ss.
CITY OF BUFFALO        )

Robert Ross Fogg, Esq., being duly sworn, affirms the following to be true and states under the penalty of perjury that:

1.      I am an attorney at law duly licensed to practice in the State of New York and before this Court, with an office located at 69 Delaware Avenue, Suite 600, Buffalo, New York 14202.  I represent the Defendant, Paul Ceglia, in the above-captioned matter and submit my affirmation and the Declaration of Attorney Paul Argentieri in support of the relief sought in the annexed Notice of Motion.

2.      Defense hereby submits to this Court, with permission of the Court, the instant written motion upon reasonable notice to the Government and with an opportunity to be heard, respectfully requesting the relief stated herein upon the grounds and the sworn allegations of fact contained herein and made upon information and belief, the sources of such information and the grounds of such belief reflected in this affirmation are conversations with attorney Paul Argentieri, Argentieri's Affidavit and Exhibits attached hereto, examination of the various papers filed in connection with this and associated proceedings, examination of the discovery previously provided by the Government, and my independent investigation of this matter.

## INTRODUCTION:

3.      Attorneys Orin S. Snyder, Alexander H. Southwell, Matthew Benjamin and Thomas H. Dupree, Jr., are of counsel to Gibson, Dunn & Crutcher LLP (hereinafter referred to as the "Gibson Dunn Attorneys," unless individually referred), represented, in the underlying civil matter, the civil defendants, Mark Zuckerberg, individually, and Facebook, Inc., who are also the complainants in the instant criminal case.  The instant criminal case commenced when the complainants' attorneys placed the alleged fraudulent contract in the public domain, at which time the public was free to reproduce, distribute, transmit, or use it in any way for any commercial or non-commercial purpose and caused the use of postal mail to become superfluous and unnecessary to any alleged fraudulent scheme.  Notwithstanding, the Gibson Dunn Attorneys participated in the underlying civil matter and have associated themselves with the government in the investigation and prosecution of the instant pending criminal matter.  The undersigned has received clear and convincing evidence that establish that the Gibson Dunn Attorneys have perpetrated a fraud upon this tribunal, as well as the tribunal in the associated civil matter.  Consequently, the undersigned, acting in good faith upon the information received, files the instant submission to reveal the fraud to this honorable tribunal.

4.      WHEREFORE, the indictment should be dismissed on the grounds of fraud upon the court and because the allegations are not a basis for criminal conduct.  In the alternative, the defense requests that the Court conduct a hearing to resolve the salient issues raised.  Otherwise, as the Court advised the Defendant that a jury trial in this matter was to commence on May 4, 2015, and that the Defendant was deemed to have voluntarily, knowingly and without justification failed to be present at the designated time and place, a trial should proceed in his absence.

## BACKGROUND:

5.      The following statement of facts and events are supported by documentary evidence filed in connection with the instant indictment and associated legal proceedings, and, as such, are uncontroverted and undisputed litigation pleadings.  Any inferences, understandings, interpretations or explanations taken or perceived as a result of any statement contained in this section are not contemplated and have been intentionally omitted.

6.      On April 28, 2003, Mark Zuckerberg, as "Seller," and Paul Ceglia (defendant herein), as "Buyer," entered into an agreement through the execution of a two-paged written contract, "in which Mark Zuckerberg agreed to perform certain programming work for Paul Ceglia in exchange for a fee."  [ECF No. 1, Page 4, Paragraph 4 Continued].

7.      On April 25, 2003, as part of his obligation under the contract, and among other consideration, Paul Ceglia remitted to Mark Zuckerberg a cashier's check in the amount of $3,000.00, which Mark Zuckerberg presented to his bank and received payment.

8.      On November 24, 2003, as part of his obligation under the contract, and among other consideration, Paul Ceglia remitted to Mark Zuckerberg a cashier's check in the amount of $1,000.00, which Mark Zuckerberg presented to his bank and received payment.

9.      On February 4, 2004, Mark Zuckerberg completed and made operational the website, "Thefacebook.com," and on July 29, 2004, Mark Zuckerberg incorporated the website business under the name "TheFaceBook, Inc."

10.      As of September 2004, Mark Zuckerberg's domicile was New York.  As of the summer of 2004 he moved to and continuously resided in California.  [WDNY Case No 10-cv-

569-RJA-LGF, EFC No 36-1, Decision and Order re Diversity of Citizenship, pg 4, filed 03/28/2011].

11.     Thereafter, on September 30, 2005, Mark Zuckerberg changed the name of the business from "TheFaceBook, Inc." to "Facebook, Inc. and transferred the originating website business from "TheFacebook.com" into "Facebook.com."

12.     On August 6, 2009, in the County of New York, Mark Zuckerberg, as principal owner, filed with the New York State Department of State, Division of Corporations, "Facebook, Inc.," under the jurisdiction of Delaware, as an active closely held foreign corporation doing business in the State of New York, for which the Department of State was directed to mail process to the listed registered agent company—Corporation Service Company, 80 State Street, Albany, New York 12207.  Thereafter, Mark Zuckerberg transferred the originating website business from "Facebook.com" into "Facebook, Inc.," of which Mark Zuckerberg was the majority stockholder.

13.     "On June 30, 2010, [Paul Ceglia, by and through his counsel of record, Attorney Paul Argentieri,] filed an Order to Show Cause, together with a Summons and Verified Complaint, commencing [his civil] action in New York State [Supreme Court], Allegany County, and naming as defendants Facebook and Mark Zuckerberg, individually."  [Case 1:10-cv-569-RJA-LGF, ECF No 5, pg 2, Filed 07/09/2010].

14.     The Order to Show Cause was accompanied by an affidavit of Paul Ceglia, sworn to on June 29, 2010, in which Paul Ceglia stated under oath that he had not received any remuneration from Mark Zuckerberg and Facebook, Inc. according to the April 28, 2003 contract

and that there was a possibility that assets would be transferred out the protection of the jurisdiction of the Allegany Supreme Court.

15.     Paul Ceglia complained, *inter alia*, while he as purchaser had complied with the terms and conditions of the April 28, 2003 contract, Mark Zuckerberg as seller failed to comply with the terms of the April 28, 2003 contract to the detriment of Paul Ceglia as purchaser.  Paul Ceglia complained that under the April 28, 2003 contract, the parties agreed that, *inter alia*, Paul Ceglia would acquire fifty percent (50%) interest in the website business of Mark Zuckerberg and that for each day after January 1, 2004, Paul Ceglia would acquire an additional 1% interest in the business, per day, until the website was completed.  Paul Ceglia further complained that as of February 4, 2004, under the terms of the April 28, 2003 contract, Paul Ceglia had acquired an additional 34% interest in the website business of Mark Zuckerberg, which was subsequently transferred to Facebook, Inc., which totaled at the time eighty four percent (84%).  Accordingly, as plaintiff, Paul Ceglia, through his counsel Paul Argentieri, demanded a declaratory judgment as against Mark Elliot Zuckerberg, individually, and Facebook, Inc. for enforcement of the terms and conditions of the April 28, 2003 contract, for a judgment for an accounting and for a judgment against Mark Zuckerberg and Facebook, Inc. in the amount of 84% of any and all monies realized by Mark Zuckerberg and Facebook, Inc. from April 28, 2003, to the present time, along with the costs, disbursements, and attorney fees for the action.

16.     On June 30, 2010, the Honorable Thomas P. Brown, Acting Supreme Court Justice, County of Allegany, State of New York, issued an Order for the civil defendants, Mark Zuckerberg, individually, and Facebook, Inc., to show why, *inter alia*, an Order should not be entered:

    a.   For a permanent injunction against them from transacting business without the transfer of 84% of the defendants' preferred and or common stock to the Plaintiff pursuant to the parties' agreement of April 28, 2003; and

    b.   For an accounting of the Defendants' business from the inception of the website, Thefacebook.com through Facebook.com into the present Facebook, Inc.

Finding sufficient cause appearing on the record, the Hon. Thomas P. Brown, A.S.C.J. further entered an Order temporarily enjoining and restraining the civil defendant Mark Elliot Zuckerberg and/or the Defendant Facebook, Inc., or any of its subsidiaries, from transferring, selling, assigning any assets, stocks, bonds, owned, possessed and/or controlled by defendants, pending the return date of July 9, 2010.

17.    In addition, on June 30, 2010, Paul Ceglia, by and through his counsel, Attorney Paul Argentieri, served the summons and verified complaint upon Mark Zuckerberg, at 2 Russell Place, Dobbs Ferry, Westchester County, New York 10522 and Facebook, Inc., at the Corporation Service Company, 80 State Street, Albany, New York 12207.

18.    As of June 2010, Mark Zuckerberg eventually changed his domicile to California. [WDNY Case No 10-cv-569-RJA-LGF, EFC No 36-1, *supra*, at pg 5].

19.    On July 6, 2010, "Facebook was personally served with the Order and Verified Complaint" and on July 8, 2010, "Zuckerberg received a set of the papers." [Case 1:10-cv-569-RJA-LGF, ECF No 5, *supra*, at pg 3].

20.    On July 9, 2010, attorneys for the civil defendants, Mark Elliot Zuckerberg and Facebook, Inc., filed a Notice of Removal, pursuant to 28 USC §§1441(a) and 1446, wherein the defendants acknowledged service of the underlying summons, complaint and Order to Show Cause, with attachments, upon Facebook, Inc. on July 6, 2010, and upon Mark Elliot Zuckerberg

on July 8, 2010.  As directed by the District Court, Attorney Lisa T. Simpson, of counsel to

Orrick, Herrington & Sutcliffe LLP, located at 51 West 52nd Street, New York, NY 10019, filed

for and was granted *Pro Hac Vice* admission to the District Court for the Western District of

New York as counsel for the civil defendant, Mark Elliot Zuckerberg and Facebook, Inc.[1]

21.     Further, attorneys for the civil defendants made application for the removal of the

civil case from the Supreme Court of the State of New York for the County of Allegany to the

United States District Court for the Western District of New York based on complete diversity of

citizenship under 28 USC §1332 and that the amount in controversy, exclusive of interest and

costs, exceeded the sum of seventy-five thousand dollars, $75,000.  [Case No. 10-cv-569-RJA-

LGF, ECF Nos 1 and 5].  In addition, attorneys for the civil defendants filed and served a Motion

to Vacate/Dissolve the Temporary Restraining Order issued by the Allegany Supreme Court.

[Case No. 10-cv-569-RJA-LGF, ECF No 4].

22.     On August 9, 2010, civil plaintiff Paul Ceglia filed a Motion to Remand the case

to State Court.  [Case No. 10-cv-569-RJA-LGF, ECF No 23].

23.     On August 30, 2010, Attorney Thomas H. Dupree, Jr., of counsel to Gibson,

Dunn & Crutcher LLP, located at 1050 Connecticut Avenue, N.W., Washington, DC 20036,

filed a motion for *Pro Hac Vice* admission to the District Court for the Western District of New

---

[1] WDNY Local Administrative Procedure Rule 1(B) require attorneys admitted in civil actions pro hac vice to "register as Filing Users of the Court's Electronic Filing System."  In addition, WDNY Local Administrative Procedure Rule 2(F)(ii) requires Registered Users to "consent to the electronic service of all documents, and must make available an electronic mail address for service during the registration process.  Upon the filing of a document by a party, a Notice of Electronic Filing, with a hyperlink to the filed document, will be automatically generated by the electronic filing system and sent via electronic mail to the e-mail addresses of all parties participating in the electronic filing system in the case.  Electronic service of the Notice of Electronic Filing constitutes service of the filed document for all purposes of the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure and the Local Rules of this Court."

York as co-counsel for the civil defendant, Mark Elliot Zuckerberg and Facebook, Inc.  On August 31, 2010, the District Court granted Attorney Dupree's admission and required Attorney Dupree to be notice by the federal CM/ECF system.  [Case No. 10-cv-569-RJA-LGF, ECF No 30].

24.     On September 21, 2010, Attorney Alexander H. Southwell, of counsel to Gibson, Dunn & Crutcher LLP, located at 200 Park Avenue 47th Floor New York, NY 10166-0193, filed a notice of appearance as co-counsel for the civil defendant, Mark Elliot Zuckerberg and Facebook, Inc.  [Case No. 10-cv-569-RJA-LGF, ECF No 32].

25.     On September 21, 2010, Attorney Orin S. Snyder, of counsel to Gibson, Dunn & Crutcher LLP, located at 200 Park Avenue 47th Floor New York, NY 10166-0193, filed a notice of appearance as co-counsel for the civil defendant, Mark Elliot Zuckerberg and Facebook, Inc. [Case No. 10-cv-569-RJA-LGF, ECF No 33].

26.     On January 25, 2011, the District Court issued a TEXT ORDER granting the civil defendants' Motion to Vacate the State Court's Temporary Restraining Order.  [Case No. 10-cv-569-RJA-LGF, ECF No 35].

27.     On March 28, 2011, the District Court entered a Decision denying Civil Plaintiff Ceglia's Motion to Remand to State Court [WDNY ECF No 23] and Ordered Plaintiff to file an amended complaint within 14 days of the Order or advise the Court of his intent not to do so. [WDNY Case No 10-cv-569-RJA-LGF, ECF No 36].  Thereafter, the civil matter and all proceedings were removed from the Allegany State Supreme Court to the United States District Court for the Western District of Western New York under Case No.: 1-10-cv-00569-RJA-LGF.

28.     On April 11, 2011, Attorney Christopher Hall, of counsel to DLA Piper LLP, located at 1251 Avenue of the Americas, 28th Floor, New York, NY 10020-1104, on behalf of Paul Ceglia, filed in the United States District Court for the Western District of New York a Notice of Substitution of Counsel.  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 38].  In addition, as permitted by the District Court, Christopher Hall filed, in the USDC for the WDNY, an Amended Complaint against Facebook, Inc., and Mark Zuckerberg, with two attachments; the subject Contract attached as Exhibit A, and a Certificate of Service.  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 39].  Contained within the amended complaint, Attorney Hall "repeat[ed] Ceglia's [initial] claims against Facebook based on the "Work For Hire Contract," and quot[ed], but [did not attach], purported emails between Zuckerberg and Ceglia discussing the development of Facebook."  [Facebook, Inc v DLA Piper LLP, 134 AD3d 610, 611, 23 NYS3d 173 (1st Dept 2015)].  "According to a certificate of service signed by CEGLIA'S counsel, the Amended Complaint was served via electronic notification and by mail on various attorneys, located in New York, New York; Buffalo, New York; and Washington, D.C., in connection with the ongoing litigation between CEGLIA, Zuckerberg and Facebook."  [ECF No 1, Criminal Complaint, page 5, fn 1].

29.     On May 26, 2011, the civil defendants, by and through their attorney Orin Snyder, filed and served an Answer to the Amended Complaint.  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 40].

30.     On June 2, 2011, attorneys for the civil defendants filed a Notice of Motion for Expedited Discovery, accompanied by a memorandum in support, eight (8) declarations and a certificate of service.  [WDNY Case No 10-cv-569-RJA-LGF, ECF Nos 44-54].  Amongst the eight declarations filed, the civil defendant Mark Elliot Zuckerberg filed an executed declaration,

with the subject contract [ECF No 1] attached, wherein civil defendant Zuckerberg stated, inter

alia, "I did not sign the document attached as Exhibit A to the Amended Complaint . . . The

document attached as Exhibit A to the Amended Complaint is not the written contract that I

signed . . . The written contract I signed concerned only the development of StreetFax's web site.

It did not mention or concern Thefacebook.com or any related social networking service or web

site."  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 46].

31.     On July 1, 2011, the WDNY District Court entered an Order, wherein, *inter alia*,

counsel for Paul Ceglia was ordered to submit a sworn declaration identifying discovery

requested by the civil defendants and to certify that such items had been produced to the civil

defendants.  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 83, Page 2, Filed 07/01/11].

32.     On July 14, 2011, attorney Jeffrey Lake, on behalf of Paul Ceglia, filed his

Declaration in accordance with the WDNY District Court's Order [ECF No 83], declaring that

all discovery material requested by the civil defendants were identified and certifying that the

same were being produced to the civil defendants.  [WDNY Case No 10-cv-569-RJA-LGF, ECF

No 87, Filed 07/14/11].

33.     On November 1, 2011, Attorney Dean Boland, on behalf of Paul Ceglia, filed in

the WDNY District Court under Case No. 10-cv-569-RJA-LGF, the following "*legal pleadings*":

    a.     Motion for Sanctions for Spoliation of Evidence by Defendants [ECF No
           188];
    b.     Memorandum of Law in Support of 188 Motion for Sanctions for
           Spoliation by Defendants [ECF No 189];
    c.     Exhibit A [ECF No 190];
    d.     Exhibit B [ECF No 191];
    e.     Declaration by Larry Stewart [ECF No 192];
    f.     Declaration by Paul Argentieri [ECF No 193];

g.   Declaration by James Blanco [ECF No 194];

h.   Declaration by Dean Boland [ECF No 195];

i.   Certificate Of Service re ECF Nos 188, 189, 190, 191, 192, 193, 194 and 195 [ECF No 196];

j.   Declaration by Larry Stewart re 192 Declaration, 196 Certificate of Service and 189 MOTION for Sanctions Memorandum of Law in Support of Motion for Sanctions for Spoliation by Defendants with attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2, # 3 Exhibit Attachment 3) [ECF No 197];

k.   Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Email by Defendant Zuckerberg [ECF No 198];

l.   Memorandum in Support Re 198 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Email by Defendant Zuckerberg, with Attachments: # 1 Exhibit A - Litigation Hold Letter, # 2 Exhibit B - Transcript of Testimony OF Mark Zuckerberg, June 22, 2006, # 3 Exhibit C - Deposition of Alan Greenspan, # 4 Exhibit D - FTC Complaint of Unfair Business Practices Against Defendant Facebook, # 5 Exhibit E - Brief Detailing Patent Infringement Finding Against Facebook [ECF No 199];

m.   Certificate of Service Re 198 and 199 [ECF No 200];

n.   Motion to Vacate 83 Order granting Defendants one-side expedited discovery [ECF No 201];

o.   Memorandum in Support re 201 Motion to Vacate 83 Order granting Defendants one-side expedited discovery [ECF No 202]; and

p.   Certificate of Service re 201 Motion to Vacate 83 Order granting Defendants one-side expedited discovery and 202 Memorandum in Support [ECF No 203].

34.   On November 11, 2011, Attorney Dean Boland, on behalf of Paul Ceglia, filed a Declaration by Robert Gianadda re 188 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Evidence by Defendants with Attachments: # 1 Certificate of Service [Case No. 10-cv-569-RJA-LGF, ECF No 212], a Motion for Sanctions for Spoliation of Facebook Contract [Case No. 10-cv-569-RJA-LGF, ECF No 213], a Memorandum in Support re 213 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Facebook Contract, with attachments #1 Exhibit A, and #2 Certificate of Service [Case No. 10-cv-569-RJA-LGF, ECF No 214], and a

Declaration by Thomas Martin re 214 Memorandum in Support, 213 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Facebook Contract [Case No. 10-cv-569-RJA-LGF, ECF No 215].

35.     On November 15, 2011, Attorney Orin Snyder, on behalf of the civil Defendants, Facebook, Inc. and Mark Zuckerberg, filed in the WDNY District Court a Motion to Strike Attorney Dean Boland's 212 Declaration and for Sanctions [216], a Memorandum in Support of the Motion to Strike [217], a Declaration by Robert Gianadda in support of the Motion to Strike [218], a Declaration of Attorney Alexander H. Southwell in support of the Motion to Strike [219], a Declaration of Attorney Terrance P. Flynn in support of the Motion to Strike [220], and a Certificate of Service [221].  [Case No. 10-cv-569-RJA-LGF, ECF Nos 216, 217, 218, 219, 220, and 221 respectively].

36.     On December 8, 2011, Attorney Orin Snyder, on behalf of the civil defendants, Facebook, Inc., Mark Elliot Zuckerberg, filed in the WDNNY District Court a Reply to Response to Motion re 216 Motion to Strike 212 Declaration and for Sanctions.  [Case No. 10-cv-569-RJA-LGF, ECF No 253].  In addition, attorneys for the civil defendants filed a Declaration signed by Robert Gianadda re 253 Reply to Response to Motion filed by Mark Elliot Zuckerberg, Facebook, Inc. filed by Mark Elliot Zuckerberg, Facebook, Inc.  [Case No. 10-cv-569-RJA-LGF, ECF No 254].

37.     Also on December 8, 2011, Attorney Dean Boland, counsel for the civil plaintiff Paul Ceglia, filed the following legal pleadings:

   a.     REPLY to the Civil Plaintiff's Response to Ceglia's 213 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Facebook Contract by Defendants Regarding ungloved handling of Facebook Contract.  [Case No. 10-cv-569-RJA-LGF, ECF No 256];

b.  DECLARATION signed by Paul Argentieri re 256 Reply to Response to Motion, filed by Paul D. Ceglia.  [Case No. 10-cv-569-RJA-LGF, ECF No 257];

c.  REPLY to Response to Motion re 198 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Email by Defendant Zuckerberg. [Case No. 10-cv-569-RJA-LGF, ECF No 258]

d.  DECLARATION signed by Jerry Grant re 258 Reply to Response to Motion.  [Case No. 10-cv-569-RJA-LGF, ECF No 259];

e.  REPLY to Response to Motion re 223 Motion Order re 41 Text Order Referring Case to Magistrate Judge,,,,, Notice of Motion for Order Prohibiting Defendants from Reliance on Argument that Ceglia Zuckerberg email exchanges in Amended Complaint are Frauds in any dispositive motion Order re 41 Text Order Referring Case to Magistrate Judge,,,,, Notice of Motion for Order Prohibiting Defendants from Reliance on Argument that Ceglia Zuckerberg email exchanges in Amended Complaint are Frauds in any dispositive motion.  [Case No. 10-cv-569-RJA-LGF, ECF No 260];

f.  REPLY to Response to Motion re 201 Motion to Vacate 83 Order granting Defendants one-side expedited discovery.  [Case No. 10-cv-569-RJA-LGF, ECF No 261];

g.  REPLY to Response to Motion re 228 Motion Order Prohibiting Defendants' Reliance on Inadmissible Evidence in Any Dispositive Motion Notice of Motion for Order Prohibiting Defendants Reliance on Inadmissible Evidence in Any Dispositive Motion [Case No. 10-cv-569-RJA-LGF, ECF No 262];

h.  REPLY to Response to Motion re 189 Motion for Sanctions Memorandum of Law in Support of Motion for Sanctions for Spoliation by Defendants, 188 Motion for Sanctions Notice of Motion for Sanctions for Spoliation of Evidence by Defendants.  [Case No. 10-cv-569-RJA-LGF, ECF No 263];

i.  DECLARATION signed by Paul Argentieri re 263 Reply to Response to Motion.  [Case No. 10-cv-569-RJA-LGF, ECF No 264]; and

j.  RESPONSE in Opposition re 243 Fourth Motion to Compel Motion to Expedite Hearing [Case No. 10-cv-569-RJA-LGF, ECF No 265].

38.  On October 25, 2012, the Government filed a Sealed Complaint accusing

Defendant Ceglia of committing mail and wire fraud in violation of 18 USC 1341, 1343 and 2.

Douglas Veatch, a Postal Inspector with the United States Postal Inspection Service ("USPIS"),

from speaking with Mark Zuckerberg and reviewing publicly filed documents in the pending

WDNY civil action, swore to and executed a two-count federal criminal complaint in the

Southern District of New York, requesting that a United States Magistrate Judge issue a warrant for the arrest and imprisonment of Paul Ceglia, alleging under Count 1 that Paul Ceglia committed the crime of mail fraud, in violation of 18 USC §§1341 and 2, and under Count 2 that he committed the crime of wire fraud, in violation of 18 USC §§1343 and 2.  [ECF No 1].

39.     Under Count 1, Mail Fraud, Veatch avers that "CEGLIA filed a federal lawsuit against Facebook, Inc. and . . .  Mark Zuckerberg falsely demanding a significant ownership stake in Facebook, Inc and caused legal pleadings and other items to be delivered by mail to Washington, D.C., among other places, from the Southern District of New York and elsewhere, including on or about April 11, 2011[2].  [ECF No 1, Complaint, *supra*, Page 1, Paragraph 1; *also see*, Docket History Report of WDNY Case No 10-cv-569-RJA-LGF].  Under Count 2, Wire Fraud, Veatch avers that "Ceglia filed a lawsuit against Facebook, Inc. and . . . Mark Zuckerberg falsely demanding a significant ownership stake in Facebook Inc. and CEGLIA caused others to send interstate electronic communications in connection with the lawsuit, including on or about July 14, 2011[3], November 1, 2011[4], and December 8, 2011[5]." *Id*.  Veatch further alleges, "To

---

[2] The significance of April 11, 2011 refers to the "*legal pleadings*" filed by Christopher Hall, on behalf of Paul Ceglia, of an Amended Complaint against Facebook, Inc., and Mark Zuckerberg, with Attachments--#1 Exhibit A, Contract and #2 Certificate of Service [WDNY Case No 10-cv-00569, ECF No 39].  The subject of Count 1, Mail Fraud, was the public legal filing of the Amended Complaint and the attachment of the subject contract, which was initially filed by Defendants, Facebook, Inc. and Mark Zuckerberg, on July 9, 2010, and on subsequent civil defendant filings.

[3] The significance of July 14, 2011 refers to the "*legal pleading*" filed by Jeffrey A. Lake, on behalf of Paul Ceglia, of the Attorney Declaration [WDNY Case No 10-cv-00569, ECF No 87] as directed by Order of the District Court [WDNY Case No 10-cv-00569, ECF No 83].

[4] The significance of November 1, 2011 refers to the "*legal pleadings*" relative to Paul Ceglia's Motion for Sanctions for Spoliation [WDNY Case No 10-cv-00569, ECF Nos 188-200]; pleadings relative to Paul Ceglia's Motion to Vacate the Court's Order [WDNY Case No 10-cv-00569, ECF No 83] granting Defendants one-side expedited discovery [WDNY Case No 10-cv-00569, ECF Nos. 201, 202 and 203].

[5] The significance of December 8, 2011 refers to the "*legal pleadings*" relative to Paul Ceglia's Motion for Sanctions for Spoliation of Facebook Contract by Defendants Regarding ungloved handling of Facebook Contract [WDNY Case No 10-cv-00569, ECF Nos 256 and 257], Motion for Sanctions for Spoliation of Email by Defendant Zuckerberg [WDNY Case No 10-cv-00569, ECF Nos 258 and 259] Characterization and admissibility of Evidence [WDNY Case No 10-cv-00569, ECF Nos 260, 262]; Discovery [WDNY Case No 10-cv-00569, ECF Nos 261];

support his lawsuit, CEGLIA replaced page one of the actual contract with a new page one doctored to make it appear as though Zuckerberg agreed to provide CEGLIA with an interest in Facebook."  [ECF No. 1, Page 4, Continued Paragraph].

40.     On October 26, 2012, Defendant Ceglia was arrested on the criminal complaint and appeared before the Honorable Judge Colleen McMahon for arraignment, upon which Defendant Ceglia entered pleas of not guilty.  The Court ordered Defendant Ceglia detained and set a date for a detention hearing.

41.     On October 30, 2012, Attorney Dean Boland filed in the civil case, a Motion to Withdraw as Attorney for the Civil Plaintiff, Paul Ceglia, wherein he described, in accurate sum and substance, that the United States Attorney's Office for the Southern District of New York filed a criminal complaint that "essentially adopts the conclusions in the [Civil] Defendants' experts' reports as the justification for two criminal charges against Plaintiff containing penalties, given Plaintiff's age, amounting to a life sentence in prison.  That complaint, consistent with Defendants' experts' opinions and those espoused by Defendants' counsel from Gibson Dunn, allege that Plaintiff's claims of an authentic contract and authentic emails, among other things in this matter, constitute fraud."  [WDNY Case No 10-cv-569-RJA-LGF, ECF Nos 579-581].  In addition, on October 30, 2012, Attorney Boland sent a letter to the District Court for the Western District of New York for *in camera* review explaining his reasons for withdrawal.  "In Boland's Memorandum, Boland refers to the recent federal criminal charges for mail and wire fraud filed against Plaintiff [Ceglia] in the Southern District of New York arising out of Plaintiff's actions in the instant civil case against Defendants and indicates that his request

---

Sanctions for Spoliation of Evidence by Defendants [WDNY Case No 10-cv-00569, ECF Nos 263 and 264]; Motion for Expedited hearing [WDNY Case No 10-cv-00569, ECF No 265].

to withdraw is not based on any belief that Plaintiff has perpetrated a fraud by bringing this case but, rather, for the reasons stated in [his *in camera* letters]."  [WDNY Case 10-cv-569-RJA-LGF, ECF No 649 Filed 03/20/13].

42.     On November 15, 2012, the Court set conditions of Defendant's pretrial release, which included, *inter alia*, $250,000 personal recognizance bond secured by certain real property, home incarceration with strict pretrial services supervision and electronic monitoring. [ECF No 5].

43.     On November 26, 2012, the Government filed the instant two-count Indictment. [ECF No 10].

44.     On November 27, 2012, Attorney Boland sent a second letter to the District Court for the Western District of New York for *in camera* review, within which Boland expressed fear from "threats that have been made against him," and expressed "fear about possible entanglement with the recent criminal charges pending against Plaintiff arising from this action." *Id*.  In particular, Boland expressed "fear for his [Boland] own safety" and feared that the United States Attorney for the Southern District has or is likely to take public actions against him as a target of the investigation directed to Plaintiff.  [WDNY Case 10-cv-569-RJA-LGF, ECF No 649 Filed 03/20/13].  Boland expressed concern with the "adverse impact of this case on his law practice."  *Id*.  "Boland's expression of personal adversity arising from his representation of Plaintiff [Ceglia]" "could interfere with his ability to continue to effectively represent Plaintiff in this action."  *Id*.  Boland "refers to potential 'ethical considerations,' and a 'risk of disciplinary proceedings or malpractice lawsuits' as bearing on his ability to effectively continue to represent Plaintiff in this case."  *Id*.  On November 27, 2012, the WDNY District Court conducted a

hearing on the Boland motion.  In denying Boland's motion for withdrawal, the District Court

determined that "this case involves a voluminous record including numerous items of forensic

analysis and testing, directed to the authenticity of the alleged contract, with which Boland has

become intimately familiar over the past 16 months of representing Plaintiff, including several

in-court oral arguments and conducting eight depositions of Defendants' experts and defending

three depositions of Plaintiff's experts."  *Id*.  The District Court found "Boland's concerns to be

wholly speculative" and his reasons "unavailing" and "too amorphous to justify withdrawal."  *Id*.

45.     On November 28, 2012, Defendant Ceglia, represented by the federal public

defender's office, appeared before the Honorable Andrew L. Carter, Jr. for arraignment on the

instant indictment, upon which Defendant Ceglia entered pleas of not guilty and the Court

continued all bail conditions.

46.     On January 16, 2013, Defendant filed a motion to change venue to the District

Court for the Western District of New York, [ECF No 20], which was denied by the Court on

March 13, 2013.

47.     On March 11, 2013, Defense filed, in the United States District Court for the

Western District of New York, a Verified Complaint and Motions for a Preliminary Injunction

and a Temporary Restraining Order against the Government seeking to enjoin the Government

from continued criminal prosecution in the Southern District of New York.  [WDNY Case No

13-cv-256-RJA, ECF No 1, 2, 3, 4 and 5].

48.     On March 26, 2013, the Honorable Leslie G. Foschio, Magistrate of the United

States District Court for the Western District of New York, issued a Report and

Recommendation granting the civil defendant's Motions to Dismiss and for Judgement on the Pleadings.  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 651].

49.     On March 25, 2014, the Honorable Richard J. Arcara, Senior District Court Judge of the United States District for the Western District of New York, issued an order adopting Magistrate Judge Leslie G. Foschio's Report and Recommendation as filed on March 26, 2013, granting the civil defendants' Motion to Dismiss and denying the civil defendants' Motion for Judgment on the Pleadings as moot.  [WDNY Case No 10-cv-569-RJA-LGF, ECF No 651].

50.     On March 26, 2014, the Honorable Michael J. Roemer, Magistrate of the United States District Court for the Western District of New York, entered a Judgment granting the Government's Motion to Dismiss Defendant's Motions for a Preliminary Injunction and Temporary Restraining Order, pursuant to Fed R Civ P 12(b)(6).  [WDNY Case No 13-cv-256-RJA, ECF No 72].

51.     On June 9, 2014, Defendant filed a Letter Motion requesting the Court to issue pretrial subpoenas, pursuant to Federal Rule of Criminal Procedure 17(c), to Mark Zuckerberg, Facebook, Inc. and Harvard University.  [ECF No 54].

52.     On June 26, 2014, Gibson Dunn Attorneys forwarded a Letter to the Court requesting that the Court accept their written response in opposition to Defendant's subpoena requests.  [ECF No 56].

53.     On September 15, 2014, the Government, invoking the Crime Fraud Exception to the attorney/client privilege, moved for disclosure of documents held by Defendant Ceglia's prior civil attorneys of the Law Firm Kasowitz and DLA Piper.  [ECF No 70 and 80].

54.     On September 30, 2014, the undersigned entered an Appearance as substitute counsel for Defendant Paul Ceglia and filed a memorandum in opposition to the Government's motion for disclosure under the crime fraud exception, to which the Government filed a reply. [ECF Nos 81, 80 and 83 respectively].

55.     On December 17, 2014, the Defense filed an Objection to the Government's use of the Crime-Fraud Exception and Subpoena Power.  [ECF No 109].  On December 18, 2014, the Defense filed Pretrial Motions, *inter alia*, to Dismiss the Indictment and Counts on grounds of the First Amendment, sufficiency and duplicity, and for an Order Issuing Subpoenas Duces Tecum.  [ECF Nos 110, 111, 112 and 114].

56.     On January 8, 2015, the criminal case was reassigned from the Honorable Andrew L. Carter, Jr. to the Honorable Vernon S. Broderick.  [ECF Notice of Reassignment].

57.     On January 15th and 29th, 2015, the undersigned filed Letters to the Court characterizing the Gibson Dunn Attorneys as "Third-Party Interlopers," objecting to the Gibson Dunn Attorneys' unethical conduct, subversion of the judicial process and refusal to comply with discovery demands and requesting an Order for the issuance of a Subpoena *Duces Tecum*.  [ECF Nos 121, 125 and 126].

58.     On February 20, 2015, the Court entered an Order for the Issuance of Subpoena *Duces Tecum*, pursuant to Rule 17, to the complainants and Ordered that the subpoenas be complied with no later than 12:00 p.m., March 16, 2015.  [ECF Nos 137 and 138].

59.     On February 23, 2015, the Defense filed an Interlocutory Notice of Appeal to the Second Circuit Court of Appeals of the Court's Memorandum and Order denying Defendant's motion to dismiss on First Amendment grounds.  [ECF No 139].

60.     On March 5, 2015, attorneys for the Defendant filed a Letter objecting to Gibson Dunn Attorneys' interference in the criminal process, improper submissions and continuing pattern to employ a strategy to avoid production of highly relevant admissible evidence, the design of which was for the sole purpose to obstruct compliance with the subpoenas and to cause delay and a prejudicial restriction on defense counsels' ability to defend Mr. Ceglia in the criminal case.  [ECF No 142].

61.     On or about March 6, 2015, the Government informed the Court and defense counsel that Defendant Ceglia cut off his electronic monitoring bracelet and left his home in violation of the conditions of his bail.  Accordingly, on March 9, 2015, the Court entered an Order setting a pretrial conference scheduled for March 10, 2015, at 11:00 a.m. and requiring Defendant Ceglia's physical appearance and allowing defense counsels' telephonic appearance. [ECF No 145].

62.     On March 10, 2015, Defendant Paul Ceglia failed to appear for the scheduled pretrial conference, as ordered by the Court.  Based upon the Government's report that Defendant Ceglia violated the conditions of his bail, the Court ordered Defendant's bail revoked [ECF No 149] and declared Defendant a fugitive [ECF No 150].  In addition, the Court ordered, *inter alia*, Gibson Dunn Attorneys' compliance with previously issued Subpoenas duces tecum [ECF Nos 137 and 138] to Facebook, Inc. and Mark Elliot Zuckerberg by the return date of Monday, March 16, 2015, at 12:00 pm [ECF No 149].

63.    On March 30, 2015, the Court issued an Order granting in part and denying in part the Government's motion for disclosure of attorney/client privileged material held by Defendant's prior counsel under the Crime-Fraud Exception.  [ECF No 166].

64.    On April 3, 2015, counsel for the Defendant filed a Letter to the Court, in which Defendant's counsel characterized the Gibson Dunn Attorneys as "third-party interlopers" stepping into the shoes of the prosecution.  The Defense protested the Gibson Dunn Attorneys' advancement of arguments on behalf of the prosecutors and thrusting irrelevant and prejudicial hearsay into the criminal proceedings.  Defense warned that the Gibson Dunn Attorneys' conduct was improper and their active injection into the criminal case was seriously interfering with Defense counsels' ability to defend.  [ECF No 170].

65.    On April 8, 2015, counsel for the Defendant filed two Letters to the Court informing the Court of the Gibson Dunn Attorneys' willful noncompliance with the Court's subpoenas *duces tecum* Order, which required the complainants to produce relevant materials under penalty of contempt for disobedience.  Defense advised the Court that the production undertaken by the Gibson Dunn Attorneys was not only unresponsive to the subpoenas but was calculated conduct evincing deliberate evasion.  Defense charged, *inter alia*, that the Gibson Dunn Attorneys' method of production was a mockery of the judicial process, in that, it was intentionally designed to make meaningful review difficult, if not impossible, and to conceal vast amounts of necessary technical data and information concerning native formats, transmission modes, origins, locations, times, etc.  [ECF No 171].

66.    On May 11, 2015, the United States Court of Appeals for the Second Circuit entered an Order granting the Government's motion for dismissal of Defendant's interlocutory

appeal on the ground that a final order had not been issued by the district court as contemplated by 28 USC §1291, and that the district court's order was not encompassed by the collateral order doctrine.  [ECF No 174].

67.     On May 26, 2015, the Court entered an order requiring Facebook to produce the fifteen instant message exchanges referred to in its May 22nd letter in native format by Friday, May 29, 2015, even if producing the documents in native format proved to be logistically difficult.  [ECF No 175].

68.     On June 1, 2017, the Court received a Letter, with four exhibits attached, from Attorney Paul A. Argentieri wherein Attorney Argentieri highlighted acts of perjury committed by Mark Zuckerberg.  [ECF No 185].  Accordingly, the Court granted the parties leave to submit papers in connection with Mr. Argentieri's submission on or before June 9, 2017. [ECF No 186].

69.     Shortly after midnight on June 10, 2017, relative to Attorney Argentieri's submission, Defense filed, *inter alia*, a Motion for an Evidentiary Hearing.  [ECF No 187].

70.     On June 13, 2017, the Court received a Letter from Attorney Paul A. Argentieri requesting permission to file six exhibits related to his June 11, 2017 Letter [ECF No 185], which the Court granted.  [ECF Nos 192 and 193].

71.     On July 5, 2017, the Court entered an Order holding the resolution of the case to await trial after Defendants capture or voluntary return to this District.  [ECF No 194].

### <u>FRAUD UPON THE COURT</u>:

**The Indictment should be dismissed on the ground that the Gibson Dunn Attorneys perpetrated a fraud on the Court and corrupted the federal judicial process, which impaired the orderly and proper administration of justice.**

72.     The Gibson Dunn Attorneys failed to uphold the honor and maintain the dignity of the legal profession and the integrity of the judicial process by casting aside their solemn professional duties, deliberately engaging in a systematic effort to perpetrate a fraud on the Court and to corrupt the federal judicial process, the conduct of which is inconsistent with the orderly and the proper administration of justice.  Their professional improprieties undermined the integrity of the judicial process, diminished the public confidence in our legal system and profession, and substantially, materially and irrevocably impaired the instant adversary adjudicative process.  Therefore, the Indictment should be dismissed.

73.     The undersigned's allegations of "fraud upon the court" are made upon information and belief, the sources of such information and the grounds of such belief reflected in this affirmation are based on the previous submissions of Attorney Paul Argentieri, Esq. that were filed with the permission of the Court on the instant docket under ECF No 185, 186, 188, 192, and 193, and the sworn affidavit of Attorney Argentieri, dated July 31, 2023, and his Exhibits A through R, which are attached hereto.  As detailed and explained in the "Argentieri Affidavit," the allegations of "fraud upon the court" are not simply a recitation of vehement indignation, but rather, brings to this Court's attention the intentions of the Gibson Dunn Attorneys to compromise the integrity of the judges of this Court and obstruct their ability to remain fair, neutral, and impartial.  *Pena v Bellnier*, No 09 Civ 8834(LAP), 2012 WL 45588511, at *1 (SDNY Sept 29, 2012).

74.     It is beyond cavil that "a goal of our legal system is that each party shall have his or her case criminal or civil, adjudicated by an impartial tribunal" and that respect for the judicial process is essential to the fair, just and proper administration of justice.  [Ethical Consideration ("EC") 7-33].

75.     "Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system."  [EC 9-1].  "In order to function properly, our adjudicative process requires an informed, impartial tribunal capable of administering justice promptly and efficiently according to procedures that command public confidence and respect."  [EC 7-20].  "Because the very essence of the legal system is to provide procedures by which matters can be presented in an impartial manner so that they may be decided solely upon the merits, any statement or suggestion by a lawyer that the lawyer can or would attempt to circumvent those procedures is detrimental to the legal system and tends to undermine public confidence in it."  [EC 9-4].  "In the final analysis, proper functioning of the adversary system depends upon cooperation between lawyers and tribunals in utilizing procedures which will preserve the impartiality of tribunals and make their decisional processes prompt and just."  [EC 7-39].

76.     Therefore, "[a] lawyer should promote public confidence in our system and in the legal profession."  [EC 9-1].  "Every lawyer owes a solemn duty to uphold the integrity and honor of the profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service[ . . . ]; to act so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety."  [EC 9-6].  "Fraudulent, deceptive, or otherwise illegal conduct by a participant in a proceeding before a tribunal [] is inconsistent with fair administration of justice, and it should never be participated in or condoned by lawyers."  [EC 8-5].

77.     As detailed in the Argentieri Affidavit, the Gibson Dunn Attorneys have initiated publicity by publicly making and disseminating extrajudicial statements on numerous occasions that have materially prejudiced the adjudicative proceedings of both the civil and criminal matters, which were not made for the purpose of protecting their clients from the substantial likelihood of any prejudicial effect of recent publicity or to mitigate recent adverse publicity. [Disciplinary Rule ("DR") 7-107(A) and EC 7-33].  Gibson Dunn Attorneys' extrajudicial statements have referred to the underlying civil matter, which was pending and triable to a jury, and to the instant pending criminal matter, which could result in defendant's incarceration.  Their statements often related to the following: 1. Defendant's character, credibility, reputation, criminal record and expected testimony; 2. The existence and contents of statements given by Defendant; 3. The identity, nature, authenticity, and the performance and results of the examinations and tests of physical evidence expected to be presented, e.g., the underlying subject contract; 4. Opinions as to Defendant's guilt in the instant criminal case; and 5. The fact that Defendant was charged with other unrelated crimes, absent disclaimers or qualifications.  These extrajudicial statements unequivocally and materially prejudiced the adjudicative proceedings in the civil case and especially in the instant criminal case.  The Gibson Dunn Attorneys knew, or reasonably should have known, that these statements were likely to be inadmissible as evidence in a trial and, nevertheless, disclosed and communicated them creating a substantial risk of prejudicing an impartial trial in the present case.  [DR 7-107(B)].  The Gibson Dunn Attorneys have flagrantly engaged in undignified and discourteous conduct that have been degrading to the tribunals and the Defendant.  The Gibson Dunn Attorneys, who were never testifying as witnesses, have repeatedly offered and alluded to irrelevant and sham statements that were intended to degrade Defendant, asserted their personal knowledge of the facts in issue and

personal opinions as to the justness of the civil cause, as to the credibility of Defendant; as to the

blameworthiness of their clients who were civil litigants, and as to the purported guilt of

defendant who stands accused of the instant crimes for which imprisonment could result.  [DR 7-

106(C)(1)-(7) and EC 7-24].

78.     As demonstrated in the Argentieri Affidavit, the Gibson Dunn Attorneys, serving

merely to harass and maliciously injure Defendant, his family, his associates, his witnesses and

his attorneys, strategically and methodically operated outside the bounds of the law.  [DR 7-102].

The Gibson Dunn Attorneys knowingly engaged in conduct contrary to the Disciplinary Rules by

knowingly using perjured testimony and false evidence, knowingly making false statements of

law and fact, knowingly advancing claims and defenses that were unwarranted under existing

law, knowingly suppressing and concealing and failing to disclose that which they were required

to reveal.  [DR 7-102(A); EC 7-26; and EC 7-27].  Moreover, the Gibson Dunn Attorneys

presented, and participated in presenting, the instant criminal charges solely to obtain an

advantage in the underlying civil matter and routinely threatened to present criminal charges

against Defendant's civil attorneys and witnesses.  [DR 7-105].

79.     "The civil adjudicative process is primarily designed for the settlement of disputes

between parties, while the criminal process is designed for the protection of society as a whole.

Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or

controversies is a subversion of that process; further, the person against whom the criminal

process is so misused may be deterred from asserting legal rights and thus the usefulness of the

civil process in settling private disputes is impaired.  As in all cases of abuse of judicial process,

the improper use of criminal process tends to diminish public confidence in our legal system."

[EC 7-21].

80.     The allegations contained in the Argentieri Affidavit support the conclusion that the Gibson Dunn Attorneys procured a fraudulent civil judgment through deceptive practices and employed the same fraudulent practices to cause the Government to secure the instant indictment and interfered with the prosecution and defense of the instant criminal proceedings.  The Gibson Dunn Attorneys' inflammatory rhetoric regarding the actions and character of the Defendant, and their intentional distortion of the facts and merits of his underlying civil litigation, amounted to an intentional plan devised to exert undue and improper influence on Defendant's civil attorneys and the judges of the United States District Courts, such that the judges' abilities to function impartially would be, and have been, impaired.  [ECF No 121- Attorney Fogg Letter to Court re Gibson Dunn withholding in bad faith discovery under subpoena request, dated 01/15/2015].

81.     Notably, "attorneys, as officers of the court, owe an unflagging duty of candor to the tribunal.  When these foundational duties are breached, the integrity of the judicial process is undermined, and a free society imperiled.  This case lays bare the damage that ensues when the obligation to be forthright is cast aside." *US v Daugerdas*, 867 F Supp 2d 445, 448 (SDNY 2012).  In addition, "all attorneys conducting discovery owe the court a heightened duty of candor." *Kosher Sports, Inc v Queens Ballpark Co, LLC*, No 10 Civ 2618 (JBW) (RLM), 2011 WL 3471508, at *7 (EDNY Aug 5, 2011).

82.     "An attorney shall strive at all times to uphold the honor and maintain the dignity of the profession.  The conduct of the lawyer before the Court * * * should be characterized by candor and fairness." *Matter of Schildhaus*, 23 AD2d 152, 155, 259 NYS2d 631 (1st Dept 1965) (internal quotations and citations omitted), citing Canons of Professional Ethics, Canon 29.  "It is unprofessional for a lawyer as `an officer of the law charged * * * with the duty of aiding in the administration of justice' to engage in practices having a tendency to mislead the court.  * * * An

attorney is to be held strictly accountable for his statements or conduct which reasonably could have the effect of deceiving or misleading the court in the action to be taken on a matter pending before it.  The court is entitled to rely upon the accuracy of any statement of a relevant fact unequivocally made by an attorney in the course of judicial proceedings.  So, a deliberate misrepresentation by an attorney of material facts in open court constitutes serious professional misconduct." *Matter of Schildhaus*, at 155-156; *see, also*, *Matter of Friedman*, 196 AD2d 280, 296, 609 NYS2d 578 (1st Dept 1994)*; Matter of Neuwirth*, 39 AD2d 365, 368, 334 NYS2d 206 (2d Dept 1972); *Matter of Weichert*, 40 AD2d 261, 263, 339 NYS2d 750 (4th Dept 1973); Canons of Professional Ethics, Canon 22.

83.    Importantly, prosecutors are officers of the court, with a corresponding "unqualified duty of scrupulous candor that rests upon government counsel."  *Shotwell Mfg. Co. v United States*, 371 US 341, 358, *reh denied* 372 US 950.  Generally, trial courts should thus be entitled to rely on the prosecutors' open court, on the record representations, without the need of a formal oath, either before or after the rendition of the verdict.  *Burns v Windsor Ins Co*, 31 F3d 1092, 1095, n 5 ["The duty of candor goes beyond the moral duty imposed on counsel by ethical codes or good conscience"]; Code of Professional Responsibility DR 7-102 [22 NYCRR 1200.33].

84.    Candor and the voluntary revelation of negative information by an attorney are the cornerstones upon which is built the judicial process.  The duty of candor is "priceless" and must be enforced using the Court's inherent power "without reservation."

85.    As detailed in the Argentieri Affidavit and his supporting Exhibits, the Gibson Dunn Attorneys have a duty of trust and confidence and a duty of candor to the Court and

violated those duties pursuant to NYCRR §1200.33(a)(3) & (5).  Considering the allegations contained in the Argentieri Affidavit, the Gibson Dunn Attorneys' breach of the duty of candor is most egregious and disturbing.  The Gibson Dunn Attorneys deceived the Court and abused the judicial process at a level that is utterly inconsistent with the orderly administration of justice and undermined the integrity of the process.  Their lack of candor properly revealed that they do not possess "the character and general fitness requisite for an attorney and counsellor-at-law." Judiciary Law §90(1)(b).  *Also see*, [ECF No 126- Attorney Fogg Letter to Court re Objection to Gibson Dunn interference as Third-Party Interlopers, dated 01/29/2015]; [ECF No 142- Attorney Mesina Letter to Court re Gibson Dunn obstruction, dated 03/05/2015]; [ECF 171 Attorney Fogg Letter to Court re Gibson Dunn Noncompliant Production under Rule 17 Subpoenas, dated 04/08/15].

86.     Through these and other deceitful acts detailed in the Argentieri Affidavit and together with the numerous material misrepresentations that the Gibson Dunn Attorneys and their clients have made under penalty of perjury, the Gibson Dunn Attorneys have deliberately engaged in a systematic effort to perpetrate a fraud on the Court and to corrupt the federal judicial process.  Accepting the allegations contained in the Argentieri submissions as true, the Gibson Dunn Attorneys' lack of professional conduct and disregard for the core concepts of the standards of professional conduct set forth in the Code of Professional Responsibility and Disciplinary Rules substantially, materially and irrevocably impaired the adversary adjudicative process and the proper administration of justice.

87.     This Court is endowed with the inherent supervisory discretionary power to enforce the moral and ethical duties imposed upon counsel by our laws, which are designed to promote public confidence in the legal profession and the proper administration of justice.

Accordingly, counsel respectfully requests that the Court consider counsel's motion in the context of the Court's broader inherent power, which "extends to a full range of litigation abuses," including fraud upon the court.  *Chambers v Nasco, Inc.*, 501 US 32, 46, 111 S Ct 2123, 115 L Ed2d 27 (1991); *see also Skywark v Isaacson*, 1999 WL 1489038, at *14 n 27 (SDNY Oct 14, 1999), aff'd 2000 WL 145465 (SDNY Feb 9, 2000).

88.     **WHEREFORE**, under the facts and circumstances of the instant case and based upon the allegations contained in Paul Argentieri's Affidavit and Exhibits, hereto attached, counsel for Defendant respectfully requests that the Court, through its inherent power:

(1) rescind the complainants' Crime Victim Status;

(2) impose sanctions upon the Gibson Dunn Attorneys; and

(3) dismiss the instant indictment.

## <u>MATERIAL IN THE PUBLIC DOMAIN</u>:

**The indictment should be dismissed on the ground that the allegations are not a basis for criminal conduct, because once the complainants placed the alleged fraudulent contract in the public domain, defendant was free to reproduce, distribute, transmit, or use it in any way for any commercial or non-commercial purpose and the use of the mails was not a necessary or incidental step to an essential part of the alleged fraud scheme.**

89.     Under Count 1, Mail Fraud, the Government alleges that Defendant Paul Ceglia committed the crime of mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2, when he, on April 11, 2011, "caused legal pleadings . . . to be delivered by mail to Washington, D.C. . . . from the Southern District of New York."  The undersigned asserts that the first count of the indictment is unsustainable in law and should be dismissed.

90.     Recognizing the well settled policy of intellectual property law, that which is in the public domain cannot be removed therefrom by action of the States, as that matter must remain in the public domain, it may be freely reproduced.  *Lear, Inc v Adkins*, 395 US 653 (1969); *Jacobson Brothers, Inc v United States*, 512 F2d 1065 (Ct Cl 1975).

91.     On July 9, 2010, attorneys for the civil defendants, Mark Elliot Zuckerberg and Facebook, Inc., initially caused Paul Ceglia's civil action pending in the Allegany Supreme Court to be adjudicated in the jurisdiction of the federal courts upon their filing of a Notice of Removal, pursuant to 28 USC §§1441(a) and 1446, and attaching as exhibits Paul Ceglia's Summons, Complaint, Order to Show Cause, Affidavit and state filed exhibits, which consisted of the April 28, 2003 contract and proof of a $1,000.00 payment to Mark Zuckerberg.  *See*, 10-cv-569-RJA-LGF, WDNY, Doc 1, Notice of Removal 07092010.

92.     Case Management/Electronic Case Files (CM/ECF) is the federal Judiciary's system that allows parties and the court to file case documents, such as pleadings, motions, and petitions electronically online with the court and makes the case information immediately available to the public through the Public Access to Court Electronic Records (PACER) system, which is an electronic public access service that allows registered users to follow, review and print case and docket information in federal appellate, district, and bankruptcy courts.

93.     Whether intentionally or unintentionally, the Civil Defendants, Mark Zuckerberg and Facebook, Inc., who are the complainants herein, associated themselves with these documents and dedicated their entirety to the public domain through the PACER system. Moreover, by placing this information in the public domain on official court records, the federal Court must be presumed to have concluded that the public interest was thereby being served.

Before filing via ECF, the Civil Defendants had the opportunity to consider whether their submissions, including attachments, contained information that should not be in the public file. In filing jurisdictional transfer submissions, the civil defendants were permitted to file the contract attachment under seal or make application to the Court to issue a protective order limiting the use of the materials. As they took neither action, we must assume from the absence of sealing or a protective order that the information disclosed in the Notice of Removal was accessible to and for the benefit of the public.

94.     Once the civil defendants filed Paul Ceglia's civil complaint, with the subject contract attached, on the PACER federal system, the files were in the public domain and available to be downloaded by PACER users. The civil defendants' public dedication was an overt act of relinquishment in perpetuity of all present and future rights to enforce, by lawsuit or otherwise, against any individual or entity, who may have freely reproduced, distributed, transmitted, used, modified, built upon, or otherwise exploited by anyone for any purpose, commercial or non-commercial, and in any way, including by methods that have not yet been invented or conceived.

95.     On April 11, 2011, with leave of the District Court, the civil attorney for Paul Ceglia filed an amended complaint, attached the subject contract as an exhibit and quoted, but did not attach, email exchanges between Paul Ceglia and Mark Zuckerberg. Thereafter, as required by the local rules of the District Court for the Western District of New York, Ceglia's civil attorney filed the formal legal pleading made in connection with the legal action on all other parties that had appeared in the action, one of whom was one of the civil defendant's attorneys located at a satellite law office in Washington, DC.

96.     Once the civil defendants placed Paul Ceglia's civil complaint and attached the subject contract in the public domain via the PACER system, it was free for others to take, use and disseminate widely.  In the absence of a protective order issued limiting the use of the materials, or other legal protection, we must assume that the information disclosed in the Civil Defendants' legal filings were potentially accessible to the public and were subject to appropriation without significant restraint by state or federal laws.  As such, neither Paul Ceglia nor his civil attorneys could be held civilly or criminally liable for subsequently reproducing, distributing, transmitting or using the subject contract as an exhibit of their formal amended pleading made in connection with the civil legal action in the Western District of New York. *Cox Broadcasting Corp v Cohn*, 420 US 469, 493-96, 95 SCt 1029, 1045-47, 43 LEd2d 328 (1975) (holding that newspaper could not be held liable for publishing information released to public in official court records); *Scheetz v The Morning Call, Inc*, 946 F2d 202, 207 (3d Cir 1991), cert denied, *Scheetz v Morning Call, Inc.*, 502 US 1095, 112 SCt 1171, 117 LEd2d 417 (1992) (holding that press was not liable for publishing contents of police reports).

97.     It follows that where Defendant Paul Ceglia subsequently reproduced and distributed the subject contract, which was previously placed in the public domain by the civil defendants, such action is not criminal conduct and cannot form the legal basis supporting the crime of mail fraud.  *United States v Young,* 232 US 155, 34 SCt 303, 58 LEd 548 (1914) ([i]t is not an unlawful scheme unless the use of the mails was a part of the scheme); *Badders v United States,* 240 US 391, 394, 36 SCt 367, 60 LEd 706 (1916) (A mailing is sufficient to bring certain conduct under the statute as long as the mailing is a step in a plot); *Kann v United States,* 323 US 88, 95, 65 SCt 148, 89 LEd 88 (1944) ([t]he federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution

of the fraud, leaving all other cases to be dealt with by appropriate state law.); *Parr et al v United States,* 363 US 370, 380, 80 SCt 1171, 4 LEd2d 1277 (1960) (Only if the mailings were a part of the execution of the fraud or were incident to an essential part of the scheme would they fall within the ban of the federal mail fraud statute); *United States v Maze*, 414 US 395, 405, 94 SCt 645, 38 LEd2d 603 (1974) (mailings must be for the purpose of executing such scheme or artifice and related to a defendant's scheme in order to bring conduct within the federal mail fraud statute).

98.     Here, the interstate mailing of the Amended Complaint, with the subject contract attached as an exhibit, to Attorney Thomas H. Dupree in Washington, DC was plainly not for the purpose of executing the alleged scheme or artifice and was not incident to an essential part of the alleged scheme.

99.     Prior to April 11, 2010, the civil defendants were already in possession of the subject contract and placed it in the public domain through the federal ECF system.  As part of the civil defendants' legal defense team, Attorney Dupree is presumed to have possessed the subject contract, and all previously filed legal pleadings.  In addition, Attorney Dupree received the District Court's electronic filing notice of the Amended Complaint and the subject contract, to which Dupree had access; thus, the physical interstate mailing of the Amended Complaint and subject contract was not a necessary step to service or even a step in the alleged plot.

100.     Accordingly, the mailing of the Amended Complaint and subject contract was not part of the execution of the alleged fraud, was not incident to an essential part of the scheme and was not even a step in the execution of the alleged fraud plot.  Consequently, the instant indictment alleging mail and wire fraud should be dismissed.

### TRIAL IN ABSENTIA:

**In the alternative, as the Court advised the Defendant that a jury trial in this matter was to commence on May 4, 2015, and he was deemed to have voluntarily, knowingly and without justification failed to be present at the designated time and place, a trial should proceed in his absence.**

101. "It has long been settled that a defendant charged with a crime may knowingly and voluntarily waive his constitutional right to be present at his trial. It must clearly appear in the record ... that the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place before the trial may proceed in his absence. This clear rule is fundamental to a defendant's right to be present at all critical stages of his criminal trial and to his constitutional right to due process." *United States v Sanchez*, 790 F2d 245, 248 (2d Cir 1986), citing *Diaz v United States*, 223 US 442, 456-58, 32 SCt 250, 254-55, 56 LEd 500 (1912); *United States v Tortora*, 464 F2d 1202, 1208-09 (2d Cir 1972), *cert denied*, sub nom; *Santoro v United States*, 409 US 1063, 93 SCt 554, 34 LEd2d 516 (1972); Fed R Crim P 43.

102. In the present case, on May 6, 2014, during a status conference held before the Hon. Andrew L. Carter, Jr, Federal Public Defenders David E. Patton and Annaliss Miron appeared for Defendant, Paul Ceglia, whose physical appearance was waived. The Judge set a scheduling order wherein Defendant's motion(s) due 5/23/14; Government's response due 6/6/14; Status conference set for 6/23/14, at 10:00 a.m.; Jury Selection & Trial set for 11/17/14.

103. On July 22, 2014, during a status conference held before the Hon. Andrew L. Carter, Jr, Federal Public Defenders David E. Patton and Annaliss Miron appeared for Defendant, Paul Ceglia, who appeared by phone. AUSA Christopher Frey appeared for the Government alongside Matthew Benjamin and Alexander H. Southwell, attorneys for Facebook

and Mark Zuckerberg.  The Judge set a scheduling order wherein a status conference was scheduled for 9/5/14, at 12:30 p.m.; and Jury Selection and Trial set for 11/17/14, at 9:30 a.m.

104.    On September 15, 2014, during a status conference held before the Hon. Andrew L. Carter, Jr, Federal Public Defenders David E. Patton and Annaliss Miron appeared for Defendant, Paul Ceglia, who appeared by phone.  The undersigned appeared as substitute retained counsel for Defendant and relieved the Federal Public Defenders Office as counsel for Defendant.  The Judge set a scheduling order wherein Defendant's motion response due 9/29/14; Government's Reply due 11/6/14; Status Conference set for 10/24/14, at 11:00 a.m.; and Jury Selection and Trial was adjourned to 5/4/15, at 9:30 a.m.

105.    On March 10, 2015, during a scheduled pretrial conference before the Hon. Vernon S. Broderick, for which Defendant Paul Ceglia's physical appearance was required, AUSA Janis Echenberg and Niketh Velamoor were present for the government and the undersigned and Gil Messina were present for Defendant Paul Ceglia via telephone.  However, Defendant Paul Ceglia did not appear, physically or otherwise, for the pretrial conference.  The Court deemed Mr. Ceglia's nonappearance an apparent flight and revoked Defendant's bail for failure to appear and for violation of bail conditions.  The Court, *inter alia*, directed the parties to "file a joint letter providing an update regarding the status of the case and their proposed amendments, if any, to the current schedule for pretrial submissions and trial by Friday, March 20, 2015.  If the parties are unable to agree, they should set forth their respective positions in the letter."  [ECF 152].

106.    On March 20, 2015, upon receipt of the parties' joint letter as directed, the Court granted the Government's Application and entered an Ordered that if the defendant had not been

apprehended by the time of the conference before the Court scheduled for Tuesday, March 24, 2015, at 10 am, the trial date and all trial-related motion and disclosure deadlines be adjourned *sine die*.  [ECF 158].

107.    Here, Defendant Paul Ceglia had been present by phone on September 15, 2014, and had been informed of the trial date scheduled for May 4, 2015.  On March 10, 2015, trial counsels for Defendant acknowledged that there was no evidence of Ceglia's whereabouts, which adequately supports the conclusion that Defendant "willfully absented himself without a reason."  Once advised of the trial date, Ceglia failed to present himself at the March 10, 2015 pretrial proceedings, and at all subsequent proceedings, including on May 4, 2015, the date set for trial.  In fact, to this date Ceglia's exact whereabouts are unknown, even if known by the Government, Ceglia has demonstrated a refusal to return to this Court's jurisdiction and has offered no justification to this Court for his absence.

108.    It is clear upon the record that Defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place.  Defendant Paul Ceglia, who stands charged with a crime, knowingly and voluntarily waived his constitutional right to be present at his trial.  Therefore, a trial in this matter may proceed in his absence.

109.    Consequently, counsel for the Defendant, Paul Ceglia, respectfully requests that this Honorable Court resume all trial-related motion and disclosure deadlines and schedule jury selection and a trial to be conducted *in absentia*.

## <u>CONCLUSION</u>:

110.     WHEREFORE, Defendant's Counsel moves for an order dismissing the indictment on the grounds that: 1) The Gibson Dunn Attorneys perpetrated a fraud upon the Court through willful conduct and systematic efforts; and 2) The complainants placed the subject contract in the public domain.  In the alternative, Defendant's Counsel moves for an order to conduct hearings and hold a trial *in absentia*.


Dated:     October 20, 2023
              Buffalo, NY                              Respectfully submitted,

                                      By:   */s/ Robert Ross Fogg*
                                            Robert Ross Fogg, Esq.
                                            Attorney for Defendant, Paul Ceglia

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,
*Plaintiff,*

v.                                          CASE No: 12-cr-00876-VSB-1

PAUL D. CEGLIA
*Defendant.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served via transmission of

Notice of Electronic Filing generated by CM/ECF on all counsel of record who are authorized to

receive electronically Notices of Electronic Filing in this criminal case on October 20, 2023.

Dated:   October 20, 2023                    Respectfully Submitted,

                                             By: /s/ Robert Ross Fogg