# EXHIBIT

# E

General Conditions of Purchase

# STREET FAX

## SECTION 1 - GENERAL PROVISIONS

**1. Definitions**

The following terms have the meaning specified when used herein:
PURCHASER – Street Fax Inc.
CONTRACTOR/SELLER – The entity, its agents, employees, experts, or sub-contractors, furnishing materials, equipment, or services hereunder, as identified on Purchase Order.
CUSTOMER – the entity contracting for construction or other services from Purchaser or which the goods and/or services provided hereunder are for incorporation into the work or are required to facilitate completion of Purchaser's contract with such entity.
PRIME CONTRACT – The contract between Purchaser and Customer and all provisions, specifications and drawings referenced therein.

**2. Entire Agreement**

The contract between the Purchaser and Seller shall consist of, and be contingent upon the Seller's acceptance of the Purchase Order, the provisions written on the face thereof, all provisions, specifications, and drawings referred to therein and these printed terms and conditions and appendices. In the event of conflict between the provisions written on the face of this Purchase Order and those contained in these printed Terms and Conditions, the provisions written on the face of the Purchase Order shall prevail. This Purchase Order shall not be modified either orally or by failure of either party to enforce their rights hereunder. It is a condition of this Purchase Order that provisions printed or otherwise contained in any quotation, order acknowledgement, shipping document, or other instrument of the seller shall be of no force or effect.

**3. Payment Terms**

No insurance or premium charges or price increases will be allowed unless authorized by Purchaser in writing. No increase in price in effect that noted on the face hereof will be considered throughout the duration of the order.

The Agreed upon fact that the Seller and the Buyer have agreed upon are as follows: Buyer agrees to pay seller the Sum of $1,100 at the onset of the contract. The Buyer agrees to pay seller $2,000 on the date due of the project, and upon completion Buyer agrees to pay seller an additional $14,100 US dollars within Thirty days of delivery of the final approved program. It has been agreed to be a 5% reduction for the order if project is not completed by due date and an additional 1% deduction for each day the program is late thereafter. Buyer agrees to pay a 3.5% late keeper month on the balance owed the seller and Seller agrees to pay a minimum of $2,000 per month to seller as acknowledges that failure to comply will result in the seller having the right to utilize the Site functionality and remove his program.

The Agreed upon project due date is May 31, 2001
[handwritten] _Amendment until delivery has been made by Mayer, Inc_  HVC

**4. Changes**

a) BY PURCHASER – Purchaser agrees that no further revisions shall be implemented until or unless approved by seller. Those revisions shall be transmitted for written approval or seller.
b) BY SELLER – The Seller agrees that no further revisions shall be implemented until or unless approved by Street Fax. Those revisions shall be transmitted for written approval or the issuer Fax Producing Department.

**5. Purchaser's Property**

Does not include the price of renting the server, and registering VeriSign and SSL. The Buyer agrees to incur these expenses in addition to the price of the contract, and will maintain control of those services at all times.

Data, drawings, tooling, patterns, materials, specifications, and any other items or information supplied to Seller under this order, are the property of the Purchaser and must be acquired upon completion of this order. Such items or information are to be used solely in the performance of the work by the seller and shall not be used or disclosed for any other purpose whatsoever without Purchaser's prior express written consent.

**6. Settlement of Controversies**

In the event that this purchase order is for materials or equipment which will be incorporated in the Customer's work under the Prime Contract, and in the case of disputes between the Purchaser and the Customer or between the Purchaser and the Seller regarding materials or equipment to be furnished by the seller, the Seller agrees to be bound to the same extent that the Purchaser is bound by the terms of the Prime Contract, and by any and all decisions or later measures made thereunder, provided that the Seller shall have the right to participate in the settlement of any dispute with the customer to the extent that the Seller will be affected thereby.

No interest shall accrue on any payments otherwise due the Seller, which is withheld or delayed as a result of any such dispute, except in the event that the Purchaser is ultimately paid interest on monies due the Seller. The Seller shall not be liable if the Seller follows instructions of the Purchaser and it is later determined that the Purchaser's instructions were not in conformance with the terms and specifications of the Prime Contract. Pending final disposition of a dispute hereunder, the Seller shall carry on the work before otherwise agreed in writing by the Purchaser.

In all instances the final authority should rest with the final Specifications.

**7. Patent Indemnity**

Purchaser hold seller harmless for any infringement either work may constitute on patents held by any third party that could form the direct request for work made by purchaser in this "work made for hire" agreement.

The Seller hereby agrees to be responsible for all claims against the Purchaser or the Customer for alleged infringement of patents by reason of the Purchaser's or Customer's possession, use, or sale of any materials or equipment furnished hereunder by the Seller or by reason of the performance of any work hereunder by the Seller. The Seller agrees to defend at its sole expense all suits against the Purchaser and/or the Customer and to save and hold harmless the Purchaser and the Customer from and against all costs, expenses, judgments, and damages of any kind which the Purchaser or the Customer may be obliged to pay or incur by reason of any such alleged or actual infringement of a patent or patents. The Purchaser and the Customer agree to render whatever assistance is reasonably open in the way of information and access to records for the defense of any such suit. This indemnity shall not extend to alleged or actual infringement resulting from the Seller's compliance with the Purchaser's or Customer's design, instructions, processes, or formulae provided, however, that the Seller agrees to be responsible if it is reasonable to assume that the Seller should have been aware of a possible alleged or actual infringement resulting from the Purchaser's or Customer's design, instructions, processes, or formulae and fails to notify the Purchaser of such possibility.

8. Assignment of Subcontracting

Neither this order nor any rights, obligations, or monies due hereunder are assignable or transferable (as security for advances or otherwise) without the Purchaser's prior written consent, and except as to purchases of raw materials or standard commercial articles or parts, the Seller shall not subcontract any major portion of the work encompassed by this order without the Purchaser's prior written approval. The Purchaser shall not be required to recognize any assignment or subcontract made without its prior written consent.

The buyer accepts that there will be two other subcontractors working on this project their work will be accepted provided a noncompete and "work made for hire agreement" are in place.

9. Proprietary Rights

It is acknowledged that this is a work made for hire agreement, and that all intellectual property rights or patent rights are that of StreetFax, Inc. All work in process or in its complete form remain the property of StreetFax Inc. If the items to be supplied hereunder have been designed in accordance with specifications or data furnished or originated by the Purchaser or its Customer, such items shall not be reproduced except with the approval of the Purchaser and, as applicable, its Customer and all drawings, photographs, data, software, and other written material or information supplied in connection therewith shall at all times remain the property of the Purchaser or its Customer and be returned promptly upon request at the completion, termination or cancellation of this order. In the event that StreetFax defaults on it payment owner rights would be granted to seller.

10. Termination

A. DEFAULT - The Purchaser may terminate this order or any part thereof by written notice if the Seller:
   i) fails to make deliveries or to complete performance of its obligations hereunder within the time specified or in accordance with the agreed schedules unless such failure is due to acts of God, strikes or other causes which are beyond the control of the Seller.
   ii) Fails to comply with the terms and conditions of the purchase order and does not cure such failure within a period of ten (10) calendar days after written notice thereof.
   iii) Makes an assignment for the benefit of creditors without prior written consent of the Purchaser, becomes insolvent or subject to proceedings under any law relating to bankruptcy, insolvency, or the relief of debtors.

Should the Purchaser elect to terminate for default, the Purchaser may take possession of all or any of the items to be supplied hereunder which are in the Seller's possession without regard to stage of completion and may complete or cause the work to completed by such same or any manufacture of process similar thereto. Any additional costs or expense incurred by the Purchaser over and above the original purchase price from the Seller plus freight costs shall be for the account of the Seller.

In all events, the Purchaser shall not be or become liable to the Seller or any third party claiming through or under the Seller for any portion of the price of any items that Purchaser elects not to accept following notice of termination for default.

11. Liens

The Seller agrees to deliver the items to be supplied hereunder free and clear of all liens, encumbrances, and claims of laborers or materialmen and the Purchaser may withhold payment pending receipt of evidence in form and substance satisfactory to it of the absence of such liens, claims and encumbrances.

12. Governing Law

This Purchase Order and any material relating thereto shall be governed by the laws of the state in which the Purchaser's office that issues the order is located.

13. Recovery of Damages

If the Seller should recover any damages as a result of antitrust violations in any manner due to price fixing on the part of another manufacturer or Seller, the Seller shall pay over to the Purchaser any sum Purchaser has suffered as a result of the same price fixing within a reasonable time after the damages are recovered by the Seller.

i) Whenever the Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this order, the Seller shall immediately give notice thereof, including all relevant information with respect thereto, to the Purchaser.

ii) The Seller shall insert the substance of this clause including this paragraph (ii) in any subtier supply agreement hereunder as to which a labor dispute may delay the timely performance of this order except that each such subtier supply agreement shall provide that in the event its timely performance is delayed or threatened by delay by an actual or potential labor dispute, the subtier Seller shall immediately notify its next higher tier Seller or Sellers, as the case may be, of all relevant information with respect to such dispute.

15. Indemnity Requirements for Contractors/Seller

Contractor/Vendor shall defend, indemnify and save Street Fax from any and all claims, suits, losses, damages, or expenses, whether caused or contributed to by the negligence of Street Fax, its agents, or employees, or otherwise, on account of injuries to or death of any and all persons whatsoever, including the Contractor/Vendor, subcontractors, employees of Contractor/Vendor, the subcontractor, and of Street Fax and any and all damage to property or whatsoever belonging, including property owned by, rented to, or in the care, custody, or control of the parties hereto arising or growing out of, or in any manner connected with the work performed under this contract, or caused or occasioned, in whole or in part by reason of or arising during the presence of the person or of the property of Contractor/Vendor, subcontractors, their employees, or agents upon or in pertaining to the property of Street Fax. Notwithstanding the foregoing, nothing herein contained is to be construed as an indemnification against the sole negligence of Street Fax.

16. Publicity

Seller shall not publish photographs or articles, give press releases, or make speeches about or otherwise publicize the existence or scope of this Purchase Order, or any generalities or details about this Purchase Order without first obtaining the written consent of Buyer.

17. Seller's Disclosure

Any information relating to the Seller's designs, manufacturing processes or manufactured products which the Seller may disclose to the Buyer in connection with the performance of this contract may be used by the Buyer for any purpose relating to the contract and in its performance without liability therefor to the Seller.

18. General Notes

Seller shall reference this purchase order number on all documents and/or correspondence related to this order.

The signatures below will activate this contract.

Buyer - Paul Ceglia, StreetFax

Seller - Mark Zuckerberg