

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 14, 2023

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Paul Ceglia*, 12 Cr. 876 (VSB)

Dear Judge Broderick:

  The Government respectfully submits this letter in opposition to defendant Paul Ceglia's motion to dismiss the indictment or, in the alternative, for a trial *in absentia*. (Dkt. 211). For the following reasons, the Government respectfully submits that this Court should deny Ceglia's motion pursuant to the fugitive disentitlement doctrine.

## Background

### A. The Charges Against Ceglia

  Ceglia was arrested on October 26, 2012, pursuant to a criminal complaint filed in this District on October 25, 2012. The complaint charged Ceglia with one count of mail fraud and one count of wire fraud. A grand jury sitting in this District returned Indictment 12 Cr. 876 (ALC) on November 26, 2012, charging Ceglia with the same crimes as set forth in the complaint.

### B. Procedural History and Ceglia's Flight

  On January 8, 2015, the case was reassigned from Judge Carter to Your Honor. Trial was set to commence on May 4, 2015. On March 6, 2015, a pretrial services officer (the "Officer") assigned to monitor Ceglia was alerted that the GPS bracelet that Ceglia was required to wear as a condition of his pre-trial release was not functioning properly. The Officer spoke with Ceglia by telephone, and Ceglia reported that the bracelet had been damaged in a fall, but Ceglia assured the officer that the bracelet was working, and sent a photograph of the bracelet purportedly on his ankle. The Officer received subsequent notifications from the bracelet indicating it was functioning properly.

  The Officer was alerted again on the evening of March 7, 2015 that there was no motion on the bracelet, but that the bracelet was in the immediate vicinity of Ceglia's home. The bracelet continued to indicate no motion until approximately 8 a.m. on March 8, 2015, when it indicated it

was charging for approximately 30 minutes. Through the evening on or about March 7, 2015 and continuing until the morning on March 8, 2015, the Officer repeatedly attempted to contact Ceglia by telephone and through the bracelet itself, but received no response. Local police visited Ceglia's home on March 8, 2015 and received no response when they knocked at the door.

On March 9, 2015, the Court ordered Ceglia to appear personally at a court conference scheduled for March 10, 2015 at 11 a.m. (Dkt. 145). Ceglia failed to appear at that conference, and the Court subsequently revoked Ceglia's bail. (Dkt. 149). In orders dated March 10, 2015 (Dkt. 150), March 27, 2015 (Dkt. 161), March 30, 2015 (Dkt. 164), May 8, 2015 (Dkt. 173), September 2, 2015 (Dkt. 178), and June 9, 2016 (Dkt. 181), the Court stated that the defendant was a fugitive. Additionally, in its March 30, 2015 Order, the Court deferred Rule 16 discovery for good cause do to Ceglia's "flight and the integrity of the ongoing investigation into his whereabouts." (Dkt. 164 at 1). The Court also denied defense counsel's request to submit further briefing on the applicability of the fugitive disentitlement doctrine. (*Id.* at 2).

As the Court is aware, the Government located Ceglia in Ecuador and sought his extradition. Although the National Court approved the extradition request, the President of Ecuador denied the request. (Dkt. 210). The Government still considers Ceglia a fugitive.

## Argument

The fugitive disentitlement doctrine vests this Court with the discretion to decline to consider a motion or application by a fugitive defendant. The Court should decline to consider the motion to dismiss the indictment or, alternatively, hold the trial *in absentia*, because, as the Court has previously held, Ceglia remains a fugitive subject to disentitlement.

### A. Applicable Law

"A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." *United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997) (quoting *Lewis v. United States*, 146 U.S. 370, 372 (1892)). It is equally axiomatic that federal courts "have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996). From these two core concepts—the necessity of a defendant's presence and the authority of a court to protect the integrity of its judgments—springs the concept of fugitive disentitlement. This doctrine dictates that the act of being a fugitive "disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970); *see also United States v. Hayes*, 118 F. Supp. 3d 620, 624 (S.D.N.Y. 2015) ("[T]he fugitive disentitlement doctrine is 'an equitable doctrine that may be applied at court discretion' barring fugitives from seeking judicial relief.") (quoting *Hanson v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006)); *In re Grand Jury Subpoenas Dates March 9, 2001*, 179 F. Supp. 2d 270, 285-86 (S.D.N.Y. 2001) (doctrine "provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades") (internal quotation marks omitted); *United States v. Gayatrinath*, No. 02 Cr. 673 (RMB), 2011 WL 873154, at *2-3 (S.D.N.Y. Mar. 11, 2011) (same).

The fugitive disentitlement doctrine is based on four policy concerns: (1) "assuring the enforceability of any decision that may be rendered against the fugitive"; (2) "imposing a penalty for flouting the judicial process"; (3) "discouraging flights from justice and promoting the efficient operation of the courts"; and (4) "avoiding prejudice to the other side caused by the defendant's escape." *United States v. Morgan,* 254 F.3d 424, 426 (2d Cir. 2001).

Under this doctrine, courts regularly deny motions to dismiss indictments by fugitives. *See, e.g.*, *Hayes* 118 F. Supp 3d at 627; *United States v. Fox*, 10 Cr. 318 (DLC), 2020 WL 4177796, at *1 (S.D.N.Y. Jan. 27, 2020); *United States v. Sindzingre*, No. 17 Cr. 0464 (JS), 2019 WL 2290494, at *8 (E.D.N.Y. May 29, 2019); *United States v. Gorcyca*, 08 Cr. 9 (FB), 2008 WL 4610297, at *1 (E.D.N.Y. Oct. 16, 2008).

### B. Discussion

#### 1. Ceglia Is a Fugitive

On numerous occasions, this Court has held that Ceglia is a fugitive, and the present motion concedes that Ceglia remains a fugitive (Mot. at 38). Ceglia's successful efforts to oppose his extradition from Ecuador only underscore his flight from the Court's jurisdiction and his ongoing fugitive status.

#### 2. The Court Should Deny Fox's Motion Under the Fugitive Disentitlement Doctrine

The Court has previously applied the fugitive disentitlement doctrine against Ceglia. (Dkt. 164). The fugitive disentitlement doctrine's four policy considerations continue to weigh in favor of applying the doctrine against Ceglia and denying the motion. *See Morgan*, 254 F.3d at 426.

First, the most basic reason for the existence of the doctrine—that there is no way to enforce an adverse decision against the fugitive—is highly relevant and weighs in the Government's favor. Were the court to consider the merits of the motion, it would be unable to assure the enforceability of its ruling. Indeed, defense counsel makes no representation that Ceglia will come to the United States to face the charges were the Court to deny the motion on the merits—nor could it, as defense counsel does not even know Ceglia's current whereabouts. (Mot. at 38). In all likelihood, Ceglia will remain abroad no matter the Court's ruling. *See Buck*, 2015 WL 195872, at *3 (noting that, "[i]n the event the Court ruled against Buck [on his motion] and Buck were to remain in Switzerland, the Court would have no ability to enforce its decision.")

Similarly, denying this motion on the ground of fugitive disentitlement would impose an appropriate remedy for Ceglia's decision to "flout[ ] the judicial process," would discourage others from remaining fugitives, and would promote the efficient operation of the courts. *See, e.g. Gorcyca*, 2008 WL 4610297, at *2 ("The Court's refusal to consider the merits of his motion serves to penalize Gorcyca (although the Court does not imply that his motion would have been granted on the merits) and deter others who similarly flout the judicial process.")

Finally, the Government has suffered prejudice because it has expended considerable time and resources, including filing an extradition request in Ecuador, in its efforts to bring Ceglia to justice. Moreover, it continues to suffer prejudice due to the ongoing trial delay, including witnesses' memories fading and victims not receiving compensation for their harms.

## Conclusion

Ceglia's flight from this Court's jurisdiction demonstrates an egregious disrespect for the authority of this Court and the integrity of the criminal justice system. The attempt by defense counsel to litigate in his absence is similarly disrespectful. Accordingly, the Government respectfully requests that this Court deny the defendant's motion pursuant to the fugitive disentitlement doctrine.[1]

Respectfully Submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Sheb Swett
Assistant United States Attorney
(212) 637-6522

---

[1] The Government does not concede any of the facts or arguments set forth in the motion. To the extent the Court does not deny the motion pursuant to the fugitive disentitlement doctrine, the Government respectfully requests an opportunity to dispute the factual allegations set forth in the motion and to respond substantively to the defendant's arguments.